| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| CAROLYN A. DYE (SBN 97527)<br>3435 Wilshire Blvd.<br>Suite 990<br>Los Angeles, CA 90010<br>Telephone: 213/368-5000<br>Facsimile:  213/368-5009<br>Email: cdye@cadye.com<br><br><br>_Attorney for Plaintiff_ | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>    SCHAFA DAVID MASSAJI,<br><br><br><br>                                    Debtor(s). | CASE NO.: 2:15-bk-20200-RK<br><br>CHAPTER: 7<br><br>ADVERSARY NUMBER: |
|---|---|
| MARK ROFEH,<br><br><br><br>                                    Plaintiff(s)<br><br>             Versus<br><br>SCHAFA DAVID MASSAJI, DEBTOR HEREIN AND BRAD KRASNOFF, CHAPTER 7 TRUSTEE<br><br><br>                                    Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING  [LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| Hearing Date: _____<br>Time: _____<br>Courtroom: 1675_____ | Place:<br>☒ 255 East Temple Street, Los Angeles, CA 90012<br>☐ 3420 Twelfth Street, Riverside, CA 92501<br>☐ 411 West Fourth Street, Santa Ana, CA 92701<br>☐ 1415 State Street, Santa Barbara, CA 93101<br>☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |
|---|---|

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

_June 2012_                                          Page 1                          **F 7004-1.SUMMONS.ADV.PROC**

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS. REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

KATHLEEN J. CAMPBELL
CLERK OF COURT

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
Deputy Clerk

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2012                                    Page 2                      **F 7004-1.SUMMONS.ADV.PROC**

FORM B104 (08/07)                                                                              2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS<br>MARK ROFEH | DEFENDANTS<br>SCHAFA DAVID MASSAJI, DEBTOR HEREIN AND BRAD KRASNOFF, CHAPTER 7 TRUSTEE |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>CAROLYN A. DYE (SBN 97527)<br>3435 Wilshire Blvd., Suite 990, Los Angeles, CA 90010<br>Telephone: 213/368-5000 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor    ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☑ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

1. DECLARATORY RELIEF and  2. SETOFF PURSUANT TO 11 U.S.C. 553(a)

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**

☐ 11-Recovery of money/property – §542 turnover of property

☐ 12-Recovery of money/property – §547 preference

☐ 13-Recovery of money/property – §548 fraudulent transfer

☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**

[X] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**

☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**

☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**

☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**

☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims

☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud

☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**

☐ 61-Dischargeability - §523(a)(5), domestic support

☐ 68-Dischargeability - §523(a)(6), willful and malicious injury

☐ 63-Dischargeability - §523(a)(8), student loan

☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)

☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**

☐ 71-Injunctive relief – imposition of stay

☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**

☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**

[X] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**

☐ 01-Determination of removed claim or cause

**Other**

☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*

☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought
Setoff of mutual pre-petition debts.

FORM B104 (08/07), page 2                                                    2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| **NAME OF DEBTOR**<br>SCHAFA DAVID MASSAJI | | **BANKRUPTCY CASE NO.**<br>15-bk-20200-RK |
| **DISTRICT IN WHICH CASE IS PENDING**<br>CENTRAL DISTRICT | **DIVISIONAL OFFICE**<br>LOS ANGELES | **NAME OF JUDGE**<br>ROBERT N. KWAN |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| **PLAINTIFF** | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** | **NAME OF JUDGE** |
| **SIGNATURE OF ATTORNEY (OR PLAINTIFF)** | | |
| **DATE**<br>11/3/15 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)**<br>CAROLYN A. DYE | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

1  CAROLYN A. DYE (SBN 97527)
   3435 Wilshire Blvd.
2  Suite 990
   Los Angeles, CA 90010
3  Telephone: 213/368-5000
   Facsimile: 213/368-5009
4
   Attorney for Mark Rofeh,
5  Chapter 7 Trustee

6

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                 LOS ANGELES DIVISION

11

12  In re                    ) Case No. 2:15-bk-20200-RK
                             )         [Chapter 7]
13  SCHAFA DAVID MASSAJI,    )
                             ) Adv. No.
14              Debtor.      )
                             ) COMPLAINT:
15  _____ )
                             )  1.  DECLARATORY RELIEF
16  MARK ROFEH,              )
                             )  2.  SETOFF PURSUANT TO 11
17              Plaintiff,   )      U.S.C. 553(a)
                             )
18       V.                  )
                             )
19  SCHAFA DAVID MASSAJI, DEBTOR )
    HEREIN AND BRAD KRASNOFF,)
20  CHAPTER 7 TRUSTEE,       )
                             )
21              Defendant.   )
    _____ )

22

23      Mark Rofeh, creditor in the above-referenced case and

24  Plaintiff, herein avers and complains as follows:

25      1.   This Court has jurisdiction over this adversary

26  proceeding pursuant to 28 U.S.C. §1334, 28 U.S.C. § 157, 11

27  U.S.C. 553(a), Rule 7001(a) and (g) and Local Rules and Orders

28  of the United States District Court for the Central District

of California governing the reference and conduct of proceedings
arising under or related to cases under Title 11 of the United
States Code.

2.    This adversary proceeding is brought pursuant to Rule
7001 (a) and (g) of the Federal Rules of Bankruptcy Proceeding.
This adversary proceeding is a core proceeding pursuant to 28
U.S.C. § 157(b)(2)(A), (K) and (O) and the Plaintiff otherwise
consents to this Court entering final orders with respect to any
matter concerning this adversary proceeding.

3.    Venue is proper in this judicial district pursuant to
28 U.S.C. § 1409(a).

4.    Defendant and Debtor, Schafa David Massaji ("Debtor")
filed a Chapter 7 Petition on June 25, 2015, Case No. 2:15-bk-
20200-RK. Defendant, Brad Krasnoff, was thereafter appointed as
the Chapter 7 Trustee in this case and serves in that capacity.
Defendant Krasnoff is sued in that capacity.

5.    Rofeh is the uncle of the Debtor, David Schafa Massaji
("Debtor"). As described herein, they each hold judgments against
the other that were final judgments for liquidated amounts prior
to the commencement of the Debtor's case.

6.    On February 17, 2015, the California Court of Appeals,
in Case No. B250315, affirmed the lower court's Judgment (entered
on March 9, 2013 in Los Angeles County Superior Court Case No.
BC405445 ("Case 2")), entering a judgment in favor of Rofeh
against Debtor. A true and correct copy of that appellate opinion
is attached as Exhibit A and the lower court's Judgment is
attached as Exhibit B. The Judgment entered in Case 2 is a final
judgment for a liquidated amount.

-2-

7.   Debtor, in turn, holds a Judgment against Rofeh arising from an earlier case, Los Angeles County Superior Court Case No. BS10704 ("Case 1") entered on May 16, 2013. (A true and correct copy of the state court judgment and the related appellate opinion entered in the appeal of that judgment are attached as Exhibits C and D, respectively.) The judgment obtained in Case 1 is a final judgment for a liquidated amount.

8.   In Debtor's schedule B he listed the Judgement he held against Rofeh (obtained in Case 1) as an asset valued at $1,900,000. A true and correct copy of that Schedule is attached hereto as Exhibit E. Debtor listed Rofeh and his wife (erroneously named "Mary Rofeh, Esq.") as creditors stating he owed each of them $2,000,000 arising from the Judgment entered in Case 2. (See Exhibit E.)(Although Rohef and his wife are each listed individually as creditors, there is only one debt for the Judgment amount from Case 2.)

9.   The judgment in favor of Rofeh was a final unavoidable judgment having been entered than 90 days prior to the commencement of the Debtor's case.

10.   The amounts owed under the two judgments are mutual obligations between Rofeh and Debtor, arising between them in the same right and in the same capacity.

11.   The amounts owed on each Judgment with interest are as listed on Exhibit F attached hereto. At the Petition date, Debtor owed Rofeh $1,694,786.78 and Rofeh owed Debtor $2,197,537.60. Thus, the amount owed by Debtor exceeds the amount owed to Rofeh.

12.   The judgment against Rofeh is property of the estate. There being no amount collectible by the estate after the setoff

-3-

1 | permitted under 11 U.S.C. 553, Trustee has no ability to

2 | liquidate the judgement the estate holds as an asset.

3 |     13.   Rofeh may file this Complaint as the Court has granted

4 | Rofeh's Motion for Relief from the automatic Stay, permitting

5 | Rofeh the right to seek setoff under 11 U.S.C. Section 553(a).

6 | **FIRST CLAIM FOR RELIEF**

7 | **Declaratory Relief as to the Amount**

8 | **Owed under the Respective Judgments**

9 |     14.   Rofeh incorporates by reference paragraphs 1-13

10 | herein above, inclusive, and re-alleges such paragraphs as though

11 | set forth in full here.

12 |     15.   Section 541(a) of the U.S. Bankruptcy Code ("Code")

13 | broadly defines property of the estate. Rule 7001(9) permits an

14 | adversary proceeding to obtain a declaratory judgment relating to

15 | any of the previously enumerated adversary proceedings in that

16 | Rule. Under Rule 7001(2) an adversary proceeding is required to

17 | "determine the validity, priority, or extent of a lien or other

18 | interest in property."

19 |     16.   This action seeks a declaratory judgment finding the

20 | amount owed at the petition date against Rofeh is less than the

21 | amount owed under Rofeh's judgment against Debtor and is subject

22 | to setoff under Section 553(a) of the Code.

23 |     17.   The amounts reflected on Exhibit F accurately calculate

24 | the amount of the Judgment owed to Debtor at the petition date.

25 |     18.   The amounts reflected on Exhibit F accurately reflects

26 | the amount of the judgment owed to Rofeh at the petition date.

27 |     19.   Based on the foregoing, Rofeh is entitled to a

28 | declaratory judgment that the amount owed to him is more than is

1 | owed to the Debtor pursuant to the judgments and is subject to
2 | setoff under Section 553(a) of the Code.

3 | ### SECOND CLAIM FOR RELIEF

4 | ### Setoff Pursuant to Section 553

5 |     20.  Rofeh incorporates by reference paragraphs 1-19
6 | herein above, inclusive, and re-alleges such paragraphs as though
7 | set forth in full here.

8 |     21.  Having obtained relief from the automatic stay, Rofeh
9 | is entitled to a setoff.

10 |     22.  Debtor has admitted at the petition date he owed a debt
11 | to Rofeh.

12 |     23.  Rofeh admits at the petition date he owed a prepetition
13 | debt to Debtor.

14 |     24.  The debts owed by and between Rofeh and Debtor are
15 | mutual debts.

16 |     25.  Section 553 preserves the right to setoff mutual debts
17 | from the remainder of the bankruptcy code, specifically the debt
18 | does not need to be found to be non-dischargeable to be subject
19 | to the setoff.

20 |     26.  Having established the prepetition debts are mutual and
21 | otherwise satisfy the requirements of Section 553(a) of the Code,
22 | Rofeh is entitled to a judgment of setoff and that he owes
23 | nothing to Debtor or the estate.

24 | ### CONCLUSION

25 |     WHEREFORE, Plaintiff, Rofeh, prays for judgment as follows:
26 |     A.   On the First Claim for Relief, for a declaratory
27 | judgment determining that due to the amount owed to Rofeh, there
28 | ///

1  is no amount owed by him on account of the judgment held by

2  Debtor at the commencement of the case;

3       B.    On the Second Claim for Relief, for a judgment finding

4  that Rofeh has proven all the elements for setoff under Section

5  553 and that he is entitled to setoff the entire amount of the

6  judgment he holds against the amount Debtor owes him, leaving

7  nothing owed by him to the estate or Debtor on account of the

8  Debtor's judgment;

9       C.    For costs of suit herein; and

10      D.    For such other and further relief, which this Court

11  deems just and proper.

12

13                              LAW OFFICE OF CAROLYN A. DYE

14

15  Dated: November 3 , 2015      By: _____

16                                  Carolyn A. Dye, Attorney for
                                    Mark Rofeh

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

Filed 2/17/15\

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

COURT OF APPEAL – SECOND DIST.

# FILED

## Feb 17, 2015

JOSEPH A. LANE, Clerk

Eva McClintock  Deputy Clerk

|  |  |
|---|---|
| SCHAFA MASSAJI,<br><br>    Plaintiff, Cross-defendant  and<br>Appellant,<br><br>    v.<br><br>MARK ROFEH et al.,<br><br>    Defendants, Cross-complainants and<br>Respondents. | B250315<br><br>(Los Angeles County<br>Super. Ct. No. BC405445) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Amy D. Hogue, Judge.  Affirmed as modified.

Chris Campbell; Geragos Law Group and Matthew J. Geragos, for Plaintiff, Cross-defendant and Appellant, Schafa Massaji.

Affeld Grivakes Zucker, David W. Affeld and Cheryl Priest Ainsworth, for Defendants, Cross-complainants and Respondents, Mark Rofeh and Serengeti Tea Company, and Defendants Serengeti Tea LLC and Jason Rofeh.

Schafa Massaji appeals from the judgment entered following a five day bench trial dissolving Serengeti Tea Company (Serengeti), finding Massaji responsible for $1,183,157 as his share of Serengeti's net liabilities prior to the date of dissolution, and awarding Mark Rofeh, Massaji's uncle and partner in Serengeti, $24,000 on Rofeh's cause of action for breach of fiduciary duty. Massaji contends the trial court erred in ruling the Serengeti partnership was dissolved in 2009 when he filed this lawsuit rather than in 2005 when he ceased participating in the management of the enterprise, finding him liable for predissolution partnership loans and losses and retrying issues finally resolved in a prior arbitration between Massaji and Rofeh. We modify the judgment to correct an obvious mistake (as to which all parties agree) and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Massaji's Role as Manager of Serengeti; the Parties' Estrangement*

Rofeh started Serengeti, originally known as Savannah Tea Company, in 1993 with his nephew (Massaji's cousin) David Soumekh. Soumekh had previously worked for a company that sold packaged ice tea mixes to restaurants and hotels. Rofeh provided the initial capital investment of $50,000; Soumekh operated the business. There was no written partnership agreement.

In 1996 Massaji's brother Daniel Massey also began working at the company as another employee/owner. Massaji joined the company in 1997, contributing his services as manager in return for a 15 percent interest in Serengeti. Massaji subsequently acquired an additional 10 percent interest in the partnership from Soumekh. Effectively functioning as the company's chief executive officer, Massaji, with the help of Soumekh and Massey, developed a hot tea product based on a tea stick and brought the company close to the point of profitability. Over the years Massaji, who handled the company's finances, made a series of loans to Rofeh and/or Serengeti to help support Serengeti's operations, as the business was not yet generating sufficient earnings to meet all of its expenses. Rofeh also made additional capital investments.

2

According to Massaji, although he was an owner/partner of Serengeti, Rofeh told him neither he nor the other nephews working in the business would be responsible for any losses suffered by the company during these early start-up years.  In addition, Massaji understood that Serengeti would not repay any of Rofeh's investments in the company until it was profitable and had cash on hand, however long that took.  Once the company generated a profit, all the partners (that is, Rofeh and his nephews) would share the profits in proportion to their ownership shares.  Rofeh acknowledged this understanding with Soumekh and Massey, but insisted his arrangement was different with Massaji, who, unlike his cousins, was an experienced and successful businessman when he came to Serengeti.  Massaji drafted an incomplete, undated and unsigned one-page partnership agreement that identified Rofeh as holding a 50.1 percent voting interest and 35 percent ownership interest in the company; the other owners were identified as Massaji, 20 percent; Soumekh, 35 percent; and Massey, 10 percent.

In early 2005 Rofeh announced he was going to become more active in Serengeti and would be bringing his son into the business as a salaried employee.  At the same time, according to Massaji, Rofeh became verbally abusive toward him.  Massaji testified he felt he was being pushed out after working for years with little or no salary to create a successful business.  Massaji stopped working for Serengeti on July 5, 2005 and, in an August 6, 2005 letter to Rofeh, memorialized several of the serious disagreements between the two men regarding the continued operation of Serengeti.  In his letter Massaji indicated he did not intend to return to the business.

When Massaji stopped working at Serengeti, according to Rofeh, he took with him many of the company's files and retained sole access to the business's email account. Massaji refused Rofeh's requests to return these materials, to provide the password for the email account or otherwise to assist Rofeh in maintaining ongoing business operations after his departure.  Other employees also left Serengeti at the same time, apparently at the encouragement of Massaji.  As a result, Rofeh testified, the business was in chaos and lost significant productivity for many months.  During this entire period

3

(that is, from July 2005 onward), Massaji's name remained on Serengeti's bank account; and in October 2009—more than four years after he had stopped working at Serengeti and 10 months after filing the instant lawsuit—Massaji made a withdrawal from that account using his still valid signature authority.

### 2. *The 2006 Arbitration Between Massaji and Rofeh and Subsequent Judicial Proceedings Regarding the Arbitration Award*

Two points of dispute following Massaji's departure from Serengeti concerned the balance due on Massaji's loans (the parties disagreed as to the amounts Rofeh had repaid) and the extent of Massaji's ownership interest in the business (Rofeh contended Massaji held only a 15 percent interest, insisting he had not acquired an additional 10 percent from his cousin). In June 2006 Massaji, on the one hand, and Rofeh and Serengeti, on the other hand, entered into a written agreement to resolve through binding arbitration any dispute regarding Massaji's loans and the nature and extent of his equity interest in Serengeti, as well as any accounting relating to those issues. Rofeh signed the agreement twice, once for himself and then again on behalf of Serengeti. By handwritten interlineation, the parties agreed to represent themselves, without counsel, in the arbitration proceedings.

The arbitration hearing took place on October 25, 2006. As provided in the arbitration agreement, the men represented themselves. Each testified and offered exhibits consisting of cancelled checks, balance sheets, tax returns, bank statements and invoices from the business, as well as statements as to their positions on the evidence.

In his final award, issued on November 17, 2006, the arbitrator, retired Los Angeles Superior Court Judge Sherman W. Smith, Jr., credited Massaji's evidence of the sums he had loaned to Serengeti and the amount of Rofeh's repayments, as set forth on a schedule prepared by Massaji. Judge Smith further found Massaji had been given a 15 percent interest in the company when he started working and had obtained another 10 percent from his brother (corrected to "cousin" in the arbitrator's subsequent, untimely clarification of the final award). Finally, Judge Smith found Rofeh's argument that Massaji had mismanaged Serengeti was unsupported by the evidence and "the statement

4

that [Massaji] agreed to work full time for seven years without pay is not credible." The arbitrator awarded Massaji $212,963.71 on his claim for money damages, plus interest of 12 percent annually compounded on the unpaid balance from June 16, 1995 to November 15, 2006. The award was against Rofeh individually and Serengeti "jointly and severally." Judge Smith also awarded Massaji a 25 percent interest in Serengeti. On December 19, 2006, following a written request from Massaji, Judge Smith issued a clarification of final award, which declared Massaji was not responsible for the debts of the business and his interest in the company was to be paid from operation profits or profits on the sale of the business.

Massaji filed a petition in superior court to confirm the award; Rofeh petitioned to vacate and set it aside. Rofeh argued, in part, Judge Smith did not have the requisite accounting or tax background specified in the parties' arbitration agreement and, therefore, was not qualified to act as arbitrator. In addition, Rofeh asserted the arbitrator had acted in excess of his authority by making Serengeti jointly and severally liable for the damage award even though the company was not a party to the arbitration. The court granted Rofeh's petition to vacate and set aside the arbitration award, concluding Judge Smith was not a qualified arbitrator under the terms of the parties' arbitration agreement and found "[t]he parties were not informed of Judge Smith's lack of qualification."

We reversed, holding the arbitrator's lack of accounting or tax expertise did not support the trial court's order denying Massaji's petition to confirm and granting Rofeh's petition to vacate the arbitration award. (*Massaji v. Rofeh* (Nov. 17, 2008, B202059) [nonpub. opn.] (*Massaji I*).) We explained that, although clearly expressing a preference for an arbitrator with a tax or accounting background, neither the arbitration agreement itself nor the parties' arbitration demand specified that only an individual with those qualifications could serve as an arbitrator. (*Id.* at pp. 8-9.)

We also held the arbitrator had not exceeded his authority by awarding damages jointly and severally against Rofeh and Serengeti even though the demand for arbitration jointly submitted by Massaji and Rofeh did not identify Serengeti as a party, pointing out

5

that the parties' binding arbitration agreement expressly applied not only to Rofeh but also to Serengeti, which had signed the agreement through an authorized principal (Rofeh).  In connection with this portion of our opinion, we observed, "[B]ecause the parties agreed to forego lawyers and to represent themselves in the arbitration proceedings, it was apparently contemplated that Rofeh would appear at the arbitration for himself and the company."  We then stated, "[W]here the parties' agreement clearly called for Serengeti to participate in the arbitration and any such participation necessarily would have been through Rofeh himself since he and Massaji were Serengeti's only partners, we believe it was reasonable for the arbitrator to conclude Serengeti, a party to the arbitration agreement, was a party to the arbitration proceeding as well." (*Massaji I, supra,* at p. 15, fn. omitted.)

Finally, we held the arbitrator's clarification of the final award, which stated Massaji was not responsible for the debts of the business, was invalid because it was made more than 30 days after issuance of the award itself and, therefore, was outside the time limit specified by Code of Civil Procedure section 1284.  Because resolution of the dispute concerning Massaji's percentage interest in the company submitted by the parties to arbitration "[was] not dependent on a determination of Massaji's responsibility for Serengeti debts or liabilities," we held the final award could properly be affirmed while disregarding the invalid clarification.

3. *Massaji's Lawsuit To Dissolve the Partnership and Massaji's and Rofeh's
Cross-claims for Breach of Fiduciary Duty; the Trial Court's Decision*

On January 13, 2009 Massaji filed a complaint and on April 7, 2009 a first amended complaint alleging causes of action for partnership dissolution, breach of fiduciary duty, accounting and appointment of a receiver against Rofeh and Serengeti, as well as Rofeh's son Jason Rofeh and a new entity formed by Rofeh and his son called Serengeti Tea LLC.  On July 24, 2009 Rofeh and Serengeti filed a cross-complaint against Massaji for breach of fiduciary duty and an accounting.

The court took live testimony (including from Massaji, Massey, Mark Rofeh and Jason Rofeh), received documentary evidence and heard oral argument in a five-day

6

bench trial conduced in late 2012 and early 2013.  The court thereafter prepared a
proposed statement of decision and invited the parties to submit objections and proposed
modifications.  After considering the parties' further filings, the court issued its statement
of decision on March 29, 2013 and entered final judgment on May 16, 2013 dissolving
the Serengeti with a date of dissolution of January 13, 2009 (the date Massaji filed his
complaint) and finding by an accounting of the partnership's financial affairs that its
assets as of the date of dissolution totaled $217,127, its liabilities totaled $4,949,756, and
Massaji's share of net liabilities amounted to $1,183,157.  The court further found in
favor of Rofeh on his cause of action for breach of fiduciary duty and against Massaji on
his breach of fiduciary duty claim.  Rofeh was awarded an additional $24,000.[1]

Based on the partial, unsigned partnership agreement prepared by Massaji, the
parties' various discussions and their conduct, the court found Massaji, Rofeh, Soumekh
and Massey had entered into an "oral and/or implied-in-fact at-will partnership
agreement" with no definite term.  Massaji initially owned 15 percent and later
25 percent.  The court further found there was no agreement on how the sharing of either
profits or losses would work:  "So long as Rofeh continued to fund the company's needs,
the parties did not have to decide how to allocate losses in the sense of debts to third
parties."

The court further found that Massaji's conduct in 2005 (discontinuing any
management services for the business) was not a formal withdrawal and did not
effectuate a dissolution of the partnership.  To the contrary, the court explained, Massaji
continued to behave as if he remained an owner of the business including during the
arbitration proceedings where he asserted an ongoing 25 percent interest in Serengeti.
Because Massaji's complaint requested dissolution, as did Rofeh's cross-complaint, and
together they owned more than 50 percent of the partnership, the court ruled Serengeti

---

[1]     An earlier trial of the case, which had resulted in a partial judgment in favor of
Rofeh, was nullified and the partial judgment vacated after Massaji successfully moved
to disqualify the judge who had been presiding over the matter.

was dissolved as of the filing of the lawsuit. The court accepted as credible and reliable the testimony of Jason Rofeh and Rofeh's expert witness regarding the amounts of Serengeti's total assets and liabilities, including its obligations to Rofeh and third parties for loans made to the entity prior to its dissolution.

With respect to the breach of fiduciary duty claims, the court concluded Massaji failed to prove Rofeh had breached any duty owed to Massaji or Serengeti but that Rofeh proved by a preponderance of the evidence Massaji had breached his duties to Rofeh "and/or" the partnership after he stopped working for the business in July 2005 by improperly withholding the password to the company's email account, removing important customer records, withholding contact information for Serengeti employees after either encouraging or allowing them to abandon their employment and taking steps to start a competing business: "[H]is petulance and his refusal to cooperate with Mark and Jason Rofeh was a breach of his duty of loyalty to [Serengeti] and his duty to place [Serengeti's] interest ahead of his own interests." The court awarded $24,000 in damages, described as losses attributable to a decline in productivity as a result of the lack of trained employees after Massaji left Serengeti.

## DISCUSSION

1. *The Judgment Must Be Modified To Correct the Erroneous Statement of Massaji's Post-dissolution Responsibilities*

Paragraph 6 of the judgment signed by the trial court provided, "Pursuant to *Urzi v. Urzi*, 140 Cal. App. 2d 589 (1956), plaintiff and cross-defendant Schafa Massaji is obligated for any share of liabilities incurred by or on behalf of Serengeti Tea Company after the date of dissolution of the partnership of January 13, 2009. By the same token, he is not entitled to any profits or assets of the partnership gained after the date of dissolution. All such liabilities and assets are Mark Rofeh's."

Massaji contends the initial sentence in this paragraph, obligating him under the circumstances of this case to share in post-dissolution liabilities, is an incorrect statement

8

of the holding of the *Urzi* case[2] and is inconsistent with the final sentence of the paragraph, which properly provides that all post-dissolution assets and liabilities are Rofeh's. Rofeh concedes in his respondent's brief that correction of this portion of the judgment is necessary: "This appears to have been a typographical error whereby the word 'not' was inadvertently omitted." We agree with the parties and order correction of the judgment to reflect that Massaji is not obligated for any share of partnership liabilities after the January 13, 2009 dissolution of Serengeti.

### 2. *The 2006 Arbitration Award Did Not Preclude Litigation of Every Issue Relating to Events that Predated the Arbitration Proceedings*

In the trial court and again on appeal Massaji argues the 2006 arbitration proceedings and award, which we ordered the trial court to confirm as corrected in *Massaji I*, precluded Rofeh from litigating issues relating to events that had occurred prior to the arbitration, specifically Massaji's obligation on loans made by Rofeh to Serengeti and Rofeh's claim that Massaji had breached fiduciary duties to Serengeti immediately after he stopped working for the business in July 2005. The trial court rejected this argument, explaining the parties' agreement to arbitrate identified only two issues to be resolved: (1) the nature and extent of Massaji's loans to Rofeh for the benefit of Serengeti and the unpaid balance, if any, on those loans; and (2) the nature and extent of Massaji's equity interest in Serengeti. The arbitrator was not asked to determine whether Serengeti continued to exist (that is, had it already been dissolved) or whether Massaji's conduct constituted a breach of his duty of loyalty to the business.

The trial court's description of the limited issues presented in the arbitration proceeding was correct. Whether the business was a partnership; if so, whether and when

---

[2]      The court in *Urzi v. Urzi, supra,* 140 Cal.App.2d 589 held, although the general rule is that a partner who continues a business after dissolution is accountable to the retiring partner for profits acquired after dissolution and before termination of the partnership, if the retiring partner is indebted to the partnership and thus has no interest in partnership assets or capital at the time of dissolution, the remaining partners have no obligation to account for post-dissolution partnership activity. (*Id.* at pp. 593-594.)

9

it had been dissolved; and what responsibility each of the owners/partners had for the business's debts other than Rofeh and Serengeti's liability to Massaji for loans he had made to the business were questions not presented or resolved in the arbitration proceedings. Indeed, in striking as untimely the arbitrator's post-award clarification and ordering the trial court to confirm the award as corrected in *Massaji I*, we observed the issues decided by the arbitrator were not "dependent on a determination of Massaji's responsibility for Serengeti's debts or liabilities."[3]  Similarly, neither Masssaji's claim that Rofeh had breached fiduciary duties owed to him nor Rofeh's cross-claim that Massaji had breached fiduciary duties after July 2005 was presented to the arbitrator.[4]

Seemingly conceding that the accounting and fiduciary duty causes of action decided by the trial court were not actually litigated in the arbitration proceeding, in his reply brief Massaji argues the claims are nonetheless precluded by the doctrine of res judicata because they "could have been litigated in the prior proceeding." (See, e.g., *Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 557 ["[r]es judicata not only precludes the relitigation of issues that were actually litigated, but also precludes the litigation of issues that could have been litigated in the prior proceeding"].)  Although Massaji is correct that a private arbitration award has the same res judicata effect as a court judgment (*Sanchez v. Carmax Auto Superstores California, LLC* (2014)

---

[3]    As discussed, in response to a request for clarification from Massaji after the final award had been made, the arbitrator found that Massaji, although a 25 percent owner of Serengeti, was not responsible for any of the debts of the business. We held the clarification was untimely and therefore invalid.

[4]    The arbitrator did state in connection with his determination that Massaji was given a 15 percent interest when he joined the business in 1997 and thereafter obtained another 10 percent interest in Serengeti, "Rofeh's argument that [Massaji] mismanaged the company is unsupported by the evidence and the statement that [Massaji] agreed to work full time for seven years without pay is not credible." Nothing in those findings, which related to Massaji's management of Serengeti prior to July 2005, suggests the arbitrator was asked to resolve Rofeh's claim that Massaji breached his duty of loyalty to Serengeti after leaving the company by refusing to disclose the company's email address, return customer files or otherwise assist Rofeh and his son to maintain the business.

224 Cal.App.4th 398, 407 ["""'[t]he doctrine of res judicata applies not only to judicial proceedings but also to arbitration proceedings"""]; *Wade v. Ports America Management Corp.* (2013) 218 Cal.App.4th 648, 653 [same]; see also *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 824, fn. 2), he misperceives the doctrine's applicability here.

Under the doctrine of res judicata a valid, final judgment on the merits precludes parties or their privies from relitigating the same "cause of action" in a subsequent suit. (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896; *Slater v. Blackwood* (1975) 15 Cal.3d 791, 795.) "Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. . . . [Citation.] Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action." (*Mycogen*, at pp. 896-897, citation and fn. omitted; see *Wade v. Ports America Management Corp., supra,* 218 Cal.App.4th at p. 657.)

California law defines a "cause of action" for purposes of the res judicata doctrine by analyzing the primary right at stake: "[A] 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.] A pleading that states the violation of one primary right in two causes of action contravenes the rule against 'splitting' a cause of action. [Citation.]" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681.) "'[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.'" (*Tensor Group v. City of Glendale* (1993) 14 Cal.App.4th 154, 160; accord, *Le Parc Community Assn. v. Workers' Comp. Appeals Bd.* (2003) 110 Cal.App.4th 1161, 1170.)

11

Rofeh's claim that Massaji breached his fiduciary duties to Seregenti post-July 2005 involved a separate primary right—different wrongful acts causing new and different injury—distinct from the primary rights at issue in the arbitration proceedings (Rofeh's claim to an ownership interest in Serengeti and his assertion of unpaid balances on personal loans to the business). Thus, even if Rofeh could have expanded the arbitration to include his breach of fiduciary duty claim, the failure to do so does not preclude him from pursing the claim in this litigation. Moreover, an important exception to the general rule of indivisibility of a primary right permits a second action on a different legal theory if the plaintiff was precluded from asserting that theory in the first action because of limitations on the subject matter jurisdiction of the first forum. (*Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 344; *Le Parc Community Assn. v. Workers' Comp. Appeals Bd., supra,* 110 Cal.App.4th at p. 1170.) Because the parties expressly limited the scope of the issues to be presented to the arbitrator, litigation of all other issues, whether or not involving the same primary rights as the arbitration proceedings, was preserved for the current forum.

### 3. *Substantial Evidence Supports the Trial Court's Finding the Partnership Was Not Dissolved in July 2005*

The California Revised Uniform Partnership Act (RUPA) applies to all partnerships as of January 1, 1999. (Corp. Code, § 16111, subd. (b).) With respect to a partnership by will, under RUPA "[a] partnership is dissolved, and its business shall be wound up . . . [¶] . . . by the express will to dissolve and wind up the partnership business of at least half of the partners . . . ." (Corp. Code, § 16801; see *Corrales v. Corrales* (2011) 198 Cal.App.4th 221, 227.) Unlike prior partnership law, which provided a partnership automatically dissolved and had to be reconstituted when a partner died or withdrew unless the partnership agreement specifically provided otherwise, RUPA introduced the concept of "dissociation," which permits the remaining partners to continue the partnership business without the withdrawing partner and without having to reform the business association. (*Corrales*, at pp. 226-227; see Corp. Code, §§ 16601, subd. (1) [dissociation occurs when partner gives notice of his or her express will to

12

withdraw as a partner]; 16602, subd. (a) ["[a] partner has the power to dissociate at any time, rightfully or wrongfully, by express will pursuant to paragraph (1) of Section 16601"].) "When a partner withdraws from a two-person partnership, however, the business cannot continue as before. One person cannot carry on a business as a partnership." (*Corrales*, at p. 228; see Corp. Code, § 16101, subd. (9) [partnership is "an association of two or more persons to carry on as coowners a business for profit"].)

Massaji does not challenge the trial court's ruling that Serengeti was an oral or implied-in-fact at-will partnership, but contends the court erred in finding there were three partners (Massaji, Rofeh and Massey) rather than only two (Massaji and Rofeh) in July 2005 and in further determining his decision to stop working for Serengeti at that time did not constitute a withdrawal from the partnership that caused its dissolution by operation of law. Substantial evidence supports both findings of the trial court.

As to the number of partners, Masaji, Rofeh and Massey all testified that Massey (Massaji's brother) was at one time a 10 percent owner of Serengeti; and documents prepared by Massji reflected that ownership share. Massey, who had been called as a witness on behalf of Massaji, testified he understood that he continued to be a partner in the enterprise; and no evidence was presented he had ever withdrawn or been expelled from the partnership.[5] Nothing more is necessary to support the trial court's finding. (See *Feresi v. The Livery, LLC* (2014) 232 Cal.App.4th 419, 424 [testimony of a single witness is sufficient to constitute substantial evidence]; *Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613 [same]; *Kolender v. San Diego County Civil Service Com.* (2005) 132 Cal.App.4th 1150, 1155 ["'[N]either conflicts in the evidence nor "'testimony which is subject to justifiable suspicion . . . justif[ies] the reversal of a judgment, for it is the exclusive province of the [trier of fact] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'"]

---

[5]    The negative pregnant of Massaji's observation in his opening brief that Massey "has had no affiliation with [Serengeti] since 2006" is that his brother continued to be involved with the business in July 2005—the critical time for purpose of this issue.

[Citations.] Testimony may be rejected only when it is inherently improbable or incredible, i.e., "'unbelievable *per se*,'" physically impossible or "'wholly unacceptable to reasonable minds'"'"'"].)

To be sure, in the course of explaining why the arbitrator had properly awarded damages jointly and severally against Rofeh and Serengeti even though the joint demand for arbitration did not identify Serengeti as a party, we said in *Massaji I*, "the parties' agreement clearly called for Serengeti to participate in the arbitration and any such participation necessarily would have been through Rofeh himself since he and Massaji were Serengeti's only partners . . . ." (*Massaji I*, at p. 15.) However, there had been no factual finding by the arbitrator regarding the number of partners in Serengeti (it was far outside the scope of any issue submitted); and our conclusion that Rofeh participated in the arbitration on behalf of Serengeti as well as himself, although reinforced by our observation, was in no way dependent upon it. Neither principles of collateral estoppel nor the law of the case precluded the trial court from resolving the issue when presented by the case at bar.

In any event, whether there were two or three partners in July 2005 is of no legal consequence given the trial court's further finding, also supported by substantial evidence, that until he filed the instant lawsuit, "Massaji never announced or gave the other partners any notice of his dissociation or withdrawal from the partnership." (See Corp. Code, §§ 16601, subd. (1), 16801, subd. (1) [notice of "express will" to withdraw required].) The correspondence exchanged by Massaji and Rofeh after he quit working for Serengeti in July 2005, although stating that Massaji would not return to the business, did not indicate he intended to end his ownership interest or request a winding up of partnership affairs. For his part, Rofeh's letter in response confirmed Massaji's continued ownership "even though you may no longer put your time in." As the trial court emphasized, Massaji did not dispute this description of his continuing status as an owner. In addition, the trial court reasonably interpreted the parties' joint demand for arbitration, which stated that Massaji had left his position as manager in 2005, but

14

described an ongoing dispute as to the extent of his ownership interest in the company, as
inconsistent with his contention he had withdrawn from the partnership the prior year.[6]
Finally, the evidence of Massaji's post-July 2005 conduct with regard to maintaining
business files and company information and ultimately writing a check as an authorized
signatory on a partnership bank account further support the trial court's factual finding.

### 4. *Substantial Evidence Supports the Trial Court's Finding Regarding Massaji's Responsibility for Repayment of Loans*

As a partner in Serengeti, Massaji was responsible for his aliquot share of the
partnership's net liabilities at the date of dissolution (January 2009). In addition to
disputing his status as a partner post-July 2005, Massaji contends the evidence was
insufficient to support the trial court's calculations in accounting for the partnership's
financial affairs—particularly Serengeti's obligations on loans from third parties.
However, although improperly ignored by Massaji in his opening brief (cf. *Ajaxo Inc. v.
E*Trade Group, Inc.* (2005) 135 Cal.App.4th 21, 50 [appellant's failure to discuss
evidence supporting trial court's findings excuses appellate court from need to address
contention of insufficient evidence]), extensive testimony and documentary evidence
were introduced, including expert opinion testimony, regarding Serengeti's assets and
liabilities based in part on properly authenticated entries in the business's general ledger
and underlying materials (for example, bank statements and checks). The trial court
found this evidence to be credible and reliable. The determination of partnership assets
and liabilities (including the nature of the interest obligation on loans made to Serengeti)

---

[6]     Responding to the trial court's analysis of his post-July 2005 conduct and
specifically its observation that he took no action to initiate a winding up of partnership
affairs for several years after he stopped working for the business, Massaji explained,
until this court's November 2008 decision in *Massaji I* confirmed the extent of his
ownership of Serengeti, "Massaji could not have been certain that he had any interest."
This lawsuit was initiated, he noted, only two months later. Although this explanation
rebuts any suggestion Massaji was dilatory in pursuing his rights, it does nothing to
support his contention he expressly withdrew from the partnership in July 2005.

at dissolution and Massaji's responsibility for his share of net liabilities was supported by sufficient evidence.

### 5. *Massaji Has Presented No Basis for Reversing the Finding He Breached His Fiduciary Duty to Serengeti*

As discussed, Massaji incorrectly asserts any claim regarding his post-July 2005 breach of fiduciary duty is barred by the doctrine of res judicata. He also contends, albeit only in his reply brief, he could not have breached any duties to Serengeti after July 2005 because he had withdrawn from the partnership and, as a result, the partnership dissolved by operation of law when he stopped working for the business. This belated argument also fails: As explained, substantial evidence supports the trial court's findings the partnership continued until Massaji filed this lawsuit in January 2009, where for the first time he provided express notice of his intent to dissolve the partnership. Accordingly, as a partner of Serengeti throughout 2005 and 2006, Massaji owed a continuing duty of loyalty to the company, which he breached by obstructing business operations through removal of customer files, withholding employee contact information and refusing to disclose the password to the company's email account, as described in testimony from Rofeh accepted as credible by the trial court.

### DISPOSITION

The judgment is modified to reflect that Massaji is not obligated for any share of partnership liabilities after the January 13, 2009 dissolution of Serengeti. As modified, the judgment is affirmed. Rofeh is to recover his costs on appeal.

PERLUSS, P. J.

We concur:

WOODS, J.                    FEUER, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**EXHIBIT B**

OF

MAY 1 6 2013

SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

RECEIVED
APR 2 6 2013

# SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| SCHAFA MASSAJI, an individual,<br><br>          Plaintiff,<br><br>          vs.<br><br>MARK ROFEH, an individual, *et al.,*<br><br>          Defendants.<br>_____<br><br>AND RELATED CROSS-ACTION<br>_____ | CASE NO.: BC405445<br><br>[PROPOSED] JUDGMENT<br><br>Assigned to Hon. Amy D. Hogue, Dept. 92, for<br>All Purposes |

This action came on regularly for trial on November 27, 2012; December 2 [illegible] January 17, 2013; January 18, 2013; and January 25, 2013, in Department 34 of the above Court, the Honorable Amy D. Hogue presiding. David W. Affeld and Victoria E. Niewrzol of Affeld Grivakes Zucker LLP appeared for defendants and cross-complainants Mark Rofeh and Serengeti Tea Company and defendants Serengeti Tea LLC and Jason Rofeh. Matthew J. Geragos and Chris Campbell appeared for plaintiff and cross-defendant Schafa Massaji.

Schafa Massaji's first amended complaint alleged causes of action for partnership dissolution, breach of fiduciary duty, accounting, and appointment of receiver against defendant and cross-complainant Mark Rofeh arising out of an enterprise known as Serengeti Tea Company. Mark Rofeh's second amended cross-complaint alleged causes of action for breach of fiduciary

1  duty, dissociation of partner, and an accounting.  At trial, Mark Rofeh dismissed his claim for

2  dissociation of partner.

3          The matter was tried to the Court.  After hearing the evidence and arguments of

4  counsel, on February 21, 2013, the Court issued a Proposed Statement of Decision (Subject to

5  Objections).  On March 8, 2013, Mark Rofeh served a request for modification of the Proposed

6  Statement of Decision.  On March 12, 2013, Schafa Massaji filed objections to the Proposed

7  Statement of Decision on March 12, 2013, and he filed a "Response" on March 18, 2013, to Mark

8  Rofeh's Request for Modification.  After considering the parties' filings with respect to the

9  Proposed Statement of Decision, on March 29, 2013, the Court issued its final Statement of

10  Decision.  Accordingly,

11          IT IS ORDERED, ADJUDGED AND DECREED that:

12          1.      Plaintiff and cross-defendant Schafa Massaji takes nothing by way of his

13  first amended complaint.

14          2.      The suit and countersuit for dissolution manifested the consent of partners

15  owning more than 50% of Serengeti Tea Company to dissolve the partnership.  The partnership

16  was dissolved, with a date of dissolution of January 13, 2009.

17          3.      By an accounting of the partnership's financial affairs, the court finds that as

18  of January 14, 2009, the partnership assets consisted of cash, inventory-raw materials, inventory-

19  finished goods, accounts receivable, machinery and equipment, intellectual property, and furniture

20  and fixtures, and that their total value amounted to $217,127.

21          4.      By an accounting of the partnership's financial affairs, the court finds that

22  that as of January 14, 2009, the partnership liabilities consisted of accounts payable; rent payable;

23  payroll liability; loans payable to Mark Rofeh, Bob Morris, Robert Massey, Ralph Massey,

24  Serengeti Tea, LLC, DJ Soufer, Debbie Abitbol, and Jason Rofeh; and a judgment payable to

25  Schafa Massaji, and that their total value amounted to $4,949,756.

26          5.      As of January 14, 2009, plaintiff and cross-defendant Schafa Massaji's share

27  of net liabilities in Serengeti Tea Company amounted to $1,183,157.

28          6.      Pursuant to *Urzi v. Urzi*, 140 Cal. App. 2d 589 (1956), plaintiff and cross-

1    defendant Schafa Massaji is obligated for any share of liabilities incurred by or on behalf of

2    Serengeti Tea Company after the date of dissolution of the partnership of January 13, 2009.  By the

3    same token, he is not entitled to any profits or assets of the partnership gained after the date of

4    dissolution.  All such liabilities and assets are Mark Rofeh's.

5           7.    For purposes of accounting each partner's share of profits and losses, the

6    Court accepts the financial analysis performed by Rofeh's expert witness based on Jason Rofeh's

7    summaries and compilations of the books and records of Serengeti Tea Company.  This accounting

8    reflects Schafa Massaji's share of the assets of Serengeti Tea Company as well as his share of its

9    losses and liabilities.

10           8.    The court makes no award of prejudgment interest on unliquidated sums.

11    As a matter of contractual agreement between the parties, the court awards interest compounded at

12    10% on the loans by Mark Rofeh and by third parties to Serengeti Tea Company.

13           9.    Based on this accounting, net of his share of assets of the partnership, Schafa

14    Massaji owes Mark Rofeh the sum of $1,757,414 as of March 8, 2013 (plus daily interest thereafter

15    at the rate of $481.48).

16          10.    Mark Rofeh is entitled to judgment against Schafa Massaji on Mark Rofeh's

17    cause of action for breach of fiduciary duty in the amount of $24,000.00.  Combined with the

18    accounting for Serengeti Tea Company, Mark Rofeh is entitled to judgment in the amount of

19    $1,781,414 plus interest in the amount of $481.48 for each day from March 9, 2013, until the date

20    this judgment is entered.  Mark Rofeh will be entitled to post-judgment interest on the entire

21    amount of the judgment once it is entered.

22          11.    Mark Rofeh is entitled to recover costs in the amount of $ _____.

23    IT IS SO ORDERED:

24    DATED: May 16, 2013

                                  Hon. Amy D. Hogue

                           Judge, Los Angeles County Superior Court

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA            )
                               )  ss.
COUNTY OF LOS ANGELES          )

      I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, California, and am not a party to the within action; my business address is 2049 Century Park East, Suite 2460, Los Angeles, California 90067.  On April 26, 2013, I served the following document described as **[PROPOSED] JUDGMENT** on the interested parties in this action as follows:

| | |
|---|---|
| Matthew J. Geragos | Chris Campbell |
| Geragos Law Group | 888 W. 6th Street, 4th Floor |
| 150 S. Los Robles Ave., Suite 665 | Los Angeles CA 90017 |
| Pasadena CA 91101 | chrislcampbell@aol.com |
| matthew@geragoslaw.com | |

Gregory R. Ellis
Law Offices of Gregory R. Ellis
350 West Colorado Blvd., Suite 200
Pasadena CA 91105
greg@ellisappeals.com

_____    **BY MAIL -** By placing a true copy thereof enclosed in a sealed envelope addressed as stated in the attached service list.  I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

**XXXXX**    I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

   X    By email (pdf) pursuant to stipulation between the parties.

    Executed on April 26, 2013, at Los Angeles, California.

<u>David W. Affeld</u>
Type or Print Name

Signature

**EXHIBIT C**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 09/11/09 | | DEPT. 51 |
|---|---|---|
| HONORABLE ABRAHAM KHAN    JUDGE | I. FLORES | DEPUTY CLERK |
| HONORABLE                    JUDGE PRO TEM #1 | | ELECTRONIC RECORDING MONITOR |
| M. CLARK, C.A.    Deputy Sheriff | NONE | Reporter |

| 1:35 pm | BS107044 | Plaintiff Counsel | NO APPEARANCE |
|---|---|---|---|
| | SCHAFA MASSAJI VS MARK ROFEH | Defendant Counsel | NO APPEARANCE |
| | CW: BS107044 | | |

**NATURE OF PROCEEDINGS:**

NUNC PRO TUNC ORDER:

Due to inadvertence and clerical error, the minute
order of July 29, 2009, does not accurately reflect
the order of the Court for Department 51.  Said
minute order is hereby corrected nunc pro tunc as
of that date, as follows:

By adding:

On his claim for monetary damages, Claimant,
Schafa (David) Massaji is awarded $212,963.71,
plus compounded interest at the rate of 12% from
June 16, 1995 to November 15, 2006 in the sum of
$625,738.21, plus simple interest at the rate of
10% from November 16, 2006 to July 29, 2009 in the
sum of $226,564.41, for a total judgment in the sum
of $1,065,266.33.  The award is against Respondent,
Mark Rofeh, individually and the Serengeti Tea
Company, jointly and severally.


The balance of the minute order, stands.

No further notice is required.

Page   1 of   1    DEPT. 51

MINUTES ENTERED
09/11/09
COUNTY CLERK

EXHIBIT  10 - 1

**EXHIBIT D**

Legal Source Directory - Because We Know Legal: Massaji v. Rofeh                    Page 1 of 8

Case 2:15-ap-01577-RK    Doc 1    Filed 11/04/15    Entered 11/04/15 17:47:36    Desc
IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA    Main Document    Page 36 of 53

SECOND APPELLATE DISTRICT

DIVISION SEVEN

SCHAFA MASSAJI,                              B202059

Plaintiff and Appellant,                     (Los Angeles County

v.                                           Super. Ct. No. BS107044)

MARK ROFEH,

Defendant and Respondent.

APPEAL from an order of the <u>Superior Court of Los Angeles County</u>, Irving S. Feffer, Judge. Reversed and remanded.

Christopher L. Campbell; Geragos Law Group and Matthew J. Geragos for Plaintiff and Appellant.

Law Offices of Ramin Azadegan and Ramin Azadegan for Defendant and Respondent.

—

Schafa Massaji appeals from the trial courts order denying his petition to confirm and granting Mark Rofehs petition to set aside and vacate the arbitration award Massaji obtained against Rofeh, resolving business disputes involving aspects of the financing and operation of Serengeti Tea Company (Serengeti). Massaji contends the court erred in setting aside the arbitration agreement on the grounds the arbitrator selected by JAMS, retired Los Angeles Superior Court Judge Sherman W. Smith, Jr., was not a qualified arbitrator under the terms of the parties <u>arbitration agreement</u> and the arbitrator exceeded his authority by including a usurious interest rate in the award and by awarding relief against Serengeti, which, although a party to the arbitration agreement, was not a party to the arbitration proceedings. We reverse and remand with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Parties Dispute*

Rofeh and another individual started Serengeti in 1995. Rofeh invested money in the company for its operating expenses.

Massaji, Rofehs nephew, made a series of loans to Rofeh and/or Serengeti between June 1995 and October 2001. In 1998 Massaji began working for Serengeti as its manager and received a 15 percent interest in the business for his services. Ultimately, a dispute arose between Massaji and Rofeh concerning the balance due on the loans Massaji had made (the parties disagreed on the amounts Rofeh had repaid) and the extent of Massajis ownership interest in Serengeti (Massaji asserted, in addition to his original 15 percent interest, he had acquired another 10 percent of the

Legal Source Directory - Because We Know Legal: Massaji v. Rofeh                                    Page 2 of 8
Case 2:15-ap-01577-RK    Doc 1   Filed 11/04/15   Entered 11/04/15 17:47:36    Desc
company from his cousin).        Main Document        Page 37 of 53

**2.** *The Agreement To Arbitrate and Selection of an Arbitrator*

On June 24, 2006 Massaji, on the one hand, and Rofeh and Serengeti, on the other hand, entered into a six-page arbitration agreement. Rofeh and Serengeti were collectively referred to in the agreement as the Serengeti Parties; Rofeh signed the arbitration agreement twice, once for himself and then again on behalf of Serengeti.

Pursuant to section 2 of the arbitration agreement (Agreement to Submit to Binding Arbitration), Massaji, Rofeh and Serengeti agreed to resolve through binding arbitration any dispute regarding Massajis loans and the nature and extent of his equity interest in Serengeti, as well as any accounting relating to those issues. Section 3.2 confirmed the scope of arbitration included those disputes and provided [t]he arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. By handwritten interlineation, the parties agreed to represent themselves, without counsel, in the arbitration proceedings.

Section 3.1 of the arbitration agreement (part of the arbitration protocol) specified that arbitration of their disputes would commence by written request to JAMS setting forth the nature and extent of the dispute and the relief requested along with the request for an arbitrator possessing the specific background and experience as stated in Section 3.3 hereunder (Submission). Section 3.3, in turn, provided, In the Submission, the Parties shall request that JAMS provide arbitrator candidates who possess no less than seven (7) years of corporate and accounting experience with a preference that such arbitrator candidates also possess experience as a certified public accountant and/or tax attorney. If the Parties cannot mutual[ly] select one (1) arbitrator within seven (7) days of [receipt] from JAMS of the candidates, then the JAMS coordinator shall so choose and designate the arbitrator for the Parties.

On the same day they signed the arbitration agreement, Massaji and Rofeh submitted on a preprinted JAMS form their Demand for Arbitration Before JAMS, identifying Massaji as the claimant and Rofeh as the respondent. Both men signed the demand form. With respect to the loan repayment issue, the demand stated, The remaining balance, if any, of the loans (principle [sic] and interest) is disputed, and further recited, in a handwritten interlineation initialed by both Massaji and Rofeh, Rofeh alleges that Schafa Massaji has received more money from Rofeh than he had any right to and as such Rofeh alleges that Massaji in fact owes Rofeh a balance. The completed JAMS demand form does not include a request that the arbitrator candidates proposed have corporate and accounting experience or otherwise specify any particular background or qualifications required or desired by the parties. (The JAMS form directs the parties to attach two copies of their arbitration agreement. Without citation to the record Rofeh asserts in his respondents brief a copy of the agreement was, in fact, submitted with the arbitration demand.)

On July 13, 2006 JAMS sent Massaji and Rofeh a letter entitled commencement of arbitration, which included a list of five candidates for arbitrator and their resumes.[1] The letter also advised the parties the candidates resumes were available on the JAMS website. Judge Smith was one of the five candidates. The parties did not agree on an arbitrator. Accordingly, on July 26, 2006 JAMS sent Massaji and Rofeh a letter advising them Judge Smith had been appointed as arbitrator.

Apparently after the appointment of Judge Smith to serve as the arbitrator, Rofeh submitted a handwritten counterclaim, which included allegations that Massaji had converted assets of the company and removed files and e-mails from Serengeti without authorization. There was also a claim regarding the allocation of tax losses from Serengeti, which included the statement, We need an acontent [sic] to see total Serengeti transaction for a true aconting [sic] - many many issues for one day to be resolved.

**3.** *The Arbitration Proceedings and Award*

The arbitration hearing took place on October 25, 2006. As provided in the arbitration agreement, the men represented themselves. Each testified and offered exhibits consisting of cancelled checks, balance sheets, tax returns, bank statements and invoices from the business, as well as statements as to their positions on the evidence. Rofeh was granted permission to submit additional evidence following the hearing. The matter was submitted on October 31, 2006.

In his final award, issued on November 17, 2006, Judge Smith noted Rofeh did not contest the fact that Massaji loaned money to Serengeti or that Rofeh had personally agreed to pay back the loans with 12 percent interest. Judge Smith credited Massajis evidence of the sums he had loaned to Serengeti and the amount of Rofehs repayments, as set forth

on a schedule prepared by Massaji, and found Rofeh had not produced competent evidence he had repaid more than Massaji alleged. The arbitrator further found Massaji had been given 5 percent interest in the company when he started working and had obtained another 10 percent from his brother (corrected to cousin in the arbitrators subsequent clarification of final award). Finally, Judge Smith found Rofehs argument that Massaji had mismanaged Serengeti was unsupported by the evidence and the statement that [Massaji] agreed to work full time for seven years without pay is not credible.

The arbitrator awarded Massaji $212,963.71 on his claim for money damages, plus interest of 12 percent annually compounded on the unpaid balance from June 16, 1995 to November 15, 2006. The award was against Rofeh individually and Serengeti jointly and severally. Judge Smith also awarded Massaji a 25 percent interest in Serengeti.

On December 6, 2006 Massaji sent a letter to Judge Smith requesting a clarification of his ruling with regard to his 25 percent interest in Serengeti. (There apparently was some question whether Massaji was responsible for investment losses suffered by the company.) The letter shows a copy sent to Rofeh by facsimile transmission; Rofeh denies receiving a copy. On December 19, 2006 Judge Smith issued a clarification of final award, which declared Massaji was not responsible for the debts of the business and his interest in the company was to be paid from operation profits or profits on the sale of the business.

4. *The Trial Court Order Vacating the Arbitration Award*

On January 24, 2007 Massaji filed a petition in the Los Angeles Superior Court to confirm the arbitration award. On February 11, 2007 Rofeh filed a petition and on April 17, 2007 a first amended petition to set aside and vacate the award. Rofehs petition to vacate argued Judge Smith did not have the requisite accounting or tax background specified in the parties arbitration agreement and, therefore, was not qualified to act as arbitrator. In addition, Rofeh asserted the arbitrator had acted in excess of his authority by making Serengeti jointly and severally liable for the damage award even though the company was not a party to the arbitration, by awarding a usurious rate of interest (12 percent annually compounded) and by correcting the final award more than 30 days after service of a signed copy of the award on the parties. (Rofeh also noted he had not received a copy of Massajis request for clarification as required by Code of Civil Procedure section 1284.[2]) Rofeh also challenged the award on the ground the arbitrator had failed to rule on his counterclaims.

Following briefing and oral argument, on June 8, 2007 the court issued its order denying Massajis petition to confirm and granting Rofehs petition to vacate and set aside the arbitration award. The court concluded Judge Smith was not a qualified arbitrator under the terms of the parties arbitration agreement and found [t]he parties were not informed of Judge Smiths lack of qualification. The court also ruled the arbitrator had exceed his authority by awarding a usurious interest rate and by including Serengeti in the award although it was not a party to the arbitration proceeding. Finally, the court stated, Additionally, the court notes that there was an ex parte communication from Massaji to the arbitrator -- an apparent reference to the December 6, 2006 letter requesting clarification of the arbitrators ruling on Massajis equity interest. Although granting Rofehs first amended petition to set aside and vacate arbitration award, in its ruling the court sustained Massajis evidentiary objections to five exhibits attached to the petition.

On June 15, 2007 Massaji filed a motion for reconsideration and submitted a copy of the JAMSs July 13, 2006 package sent to Massaji and Rofeh listing arbitrator candidates and including Judge Smiths resume, which did not indicate he had any particular accounting or corporate tax experience. Massaji also provided a declaration in which he explained at some length various personal difficulties that had prevented him from locating his JAMS file before the hearing on the petition to vacate the award. The court denied the motion on July 27, 2007, concluding Massaji had failed to show sufficient diligence in locating the JAMS correspondence. The court also reiterated its statement, included in its June 8, 2007 order, that the parties to the arbitration were entitled to expect that all the potential arbitrators provided by JAMS met the parties qualification requirements.

**DISCUSSION**

1. *Grounds for Vacating an Arbitration Award and Standard of Review*

When parties agree to private arbitration, the scope of judicial review is strictly limited in order to give effect to the parties intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels . . . . (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10 (*Moncharsh*).) A court may not review the merits of the controversy between the parties, the validity of the arbitrators reasoning or the sufficiency of the evidence supporting the arbitration award. (*Ibid.*) [I]t is within the power of the arbitrator to make a mistake either legally or factually. When parties opt for

the forum of arbitration they agree to be bound by the decision of that forum knowing that arbitrators, like judges, are fallible. (Id. at p. 12; accord, Cable Connection, Inc. v. DIRECTV, Inc. (2008) 44 Cal.4th 1334,1340 [the California Legislature adopt[ed] the position taken in case law . . . that is, that in the absence of some limiting clause in the arbitration agreement, the merits of the award, either on questions of fact or of law, may not be reviewed except as provided in the statute].)

Judicial review of an arbitration award is limited to circumstances involving serious problems with the award itself, or with the fairness of the arbitration process. (Moncharsh, supra, 3 Cal.4th at p. 12.) The only grounds on which a court may vacate an award are enumerated in section 1286.2.[3] [C]ourts are authorized to vacate an award if it was (1) procured by corruption, fraud, or undue means; (2) issued by corrupt arbitrators; (3) affected by prejudicial misconduct on the part of the arbitrators; or (4) in excess of the arbitrators powers. (Cable Connection, Inc. v. DIRECTV, Inc., supra, 44 Cal.4th at p.1344.) There is a presumption favoring the validity of the award, and [the party challenging the award] bears the burden of establishing [a] claim of invalidity. (Betz v. Pankow (1993) 16 Cal.App.4th 919, 923.)

We review a trial courts order vacating an arbitration award de novo. (Malek v. Blue Cross of California (2004) 121 Cal.App.4th 44, 55.) To the extent that the trial courts ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues. (Id. at pp. 55-56.)

2. The Arbitrators Lack of Accounting Expertise Does Not Support the Trial Courts Order Vacating the Arbitration Award

The parties arbitration agreement provided their submission initiating arbitration would request that JAMS provide arbitrator candidates who possess corporate and accounting experience with a preference that the arbitrator candidates also have professional experience as a certified public accountant or tax attorney. Although clearly expressing a preference for an arbitrator with these qualifications, neither the agreement itself nor the parties arbitration demand specified that only an individual with the desired tax or accounting background could serve as an arbitrator. In fact, the parties joint demand for arbitration as submitted to JAMS omitted any reference to the arbitrators prior professional experience -- either mandatory or precatory -- and stated no requirements in that regard.

In his petition to vacate, Rofeh insisted he did not know Judge Smith did not have the professional background or experience the parties desired and stated he relied upon JAMS to determine the arbitrators qualifications. Yet in response to the motion for reconsideration, Rofeh conceded JAMS had provided the parties with a list of five potential arbitrators, including Judge Smith, prior to the arbitration, together with their resumes. Although Judge Smith served for 20 years on the Los Angeles Municipal Court and the Los Angeles Superior Court and is described in his JAMS resume as having extensive experience in complex commercial litigation, he does not have a professional tax or accounting background; and nothing in the one-page resume Rofeh admittedly received would suggest he does. Faced with this fact, Rofeh simply asserted [i]t is not reasonable to expect that a party, without being represented by counsel, could correctly determine the qualification of an arbitrator by reviewing a general and brief description of his background contained in his resume.

Without citing any statutory provision or case law on this point, the trial court agreed with Rofeh it was common sense to expect that only qualified arbitrators were being provided to them for approval and identified Judge Smiths failure to inform the parties of his purported lack of qualification as one ground for vacating the arbitration award. This was error. As discussed, nothing in the arbitration agreement or the parties joint arbitration demand required JAMS to provide arbitrator candidates or select an arbitrator with any specific professional qualifications. At most, the parties agreement expressed a preference as to the background of the arbitrator; and they failed even to communicate that preference to JAMS and to Judge Smith in their arbitration demand. Section 1286.2, subdivision (a)(6)(A), which authorizes the court to vacate an award if the arbitrator has failed to disclose in a timely fashion grounds for disqualification of which the arbitrator was aware -- grounds that go to the arbitrators impartiality (see 1281.9, 1281.91), not his or her qualifications -- is simply inapplicable to this situation. (See, e.g., International Alliance of Theatrical Stage Employees, Etc. v. Laughon (2004) 118 Cal.App.4th 1380, 1386-1387 [when Legislature amended 1281.9 and 1286.2, subd. (a)(6)(A), in 2001, it intended to require disclosure of [a]ll matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial].)

In addition, at various times while the arbitration proceeding was pending before Judge Smith, both parties suggested an accountant was needed to resolve the dispute -- plainly indicating Massaji and Rofeh each understood Judge Smith did not have the necessary accounting background. Rofehs counterclaim stated (in a close paraphrase) an accountant was required in order to review all the Serengeti transactions for a true accounting. For his part, Massaji submitted (and provided Rofeh) a ledger sheet showing amounts loaned and repaid and a balance due, but added, For an exact balance, I think we need a professional accountant to go over all the figures/dates. While Rofeh may be correct these facts, coupled with the Rofehs failure to object to Judge Smiths service as an arbitrator until after the adverse award was returned, do not amount to a waiver -- that is, the voluntary relinquishment of a known right (see Saint Agnes Medical Center v. PacifiCare of California (2003) 31 Cal.4th 1187, 1195, fn. 4) -- they do constitute an acquiescence in, or

forfeiture of any right to challenge the arbitration proceedings as conducted (see [ ] [M1K14 M4ver94neroly denotes voluntary relinquishment of a known right/Mairan Docourse nd the Prgé p20 b (453 a result of a partys failure to perform an act it is required to perform, regardless of the partys intent to relinquish the right]; see *Blatt v. Farley* (1990) 226 Cal.App.3d 621, 629 [party who continues with arbitration without objection despite knowledge of an irregularity in the proceedings cannot subsequently challenge arbitration award based on that irregularity]; *American Home Assurance Co. v. Benowitz* (1991) 234 Cal.App.3d 192, 201 [party may be estopped from questioning selection of arbitrator not authorized by arbitration contract].)

### 3. *The Arbitrators Award of Interest of 12% Annually Compounded Does Not Support the Trial Courts Order Vacating the Arbitration Award*

In his final award the arbitrator concluded Massaji was entitled to monetary damages in the sum of $212,963.71 for repayment of loans he had made, plus interest at a compound annual rate of 12 percent on the unpaid balances from June 16, 2005 to November 15, 2006. The 12 percent interest rate awarded is consistent with both Massajis position in the arbitration and the arbitrators finding that Respondent [Rofeh] agrees that Claimant [Massaji] loaned the company money and that he personally agreed to pay back the loans with 12% interest.

Article XV, section 1, of the California Constitution sets forth Californias prohibition of usury. It limits the interest rate lenders can charge on commercial loans to the higher of 10 percent or 5 percent plus the Federal Reserve Bank of San Franciscos rate on the 25th day of the month preceding the date the agreement was contracted. (See *Stoneridge Parkway Partners, LLC v. MW Housing Partners III, L.P.* (2007) 153 Cal.App.4th 1373, 1379.) In his petition to vacate and set aside the arbitration award, as well as his opposition to Massajis petition to confirm the award, Rofeh argued the award of a usurious rate of interest exceeded the arbitrators powers. ( 1286.2, subd. (a)(4).) Even if Rofeh were correct that the interest rate used by the arbitrator exceeded the maximum allowed, to the extent this simply constitutes an error of law, it is not a ground to vacate the award. (See *Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1184 [When parties contract to resolve their disputes by private arbitration, their agreement ordinarily contemplates that the arbitrator will have the power to decide any question of contract interpretation, historical fact or general law necessary, in the arbitrators understanding of the case, to reach a decision. [Citations.] Inherent in that power is the possibility the arbitrator may err in deciding some aspect of the case. Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error, for [t]he arbitrators resolution of these issues is what the parties bargained for in the arbitration agreement.].)

Rofeh argued, however, and the trial court found, by virtue of Californias strong and well-defined public policy against usury (see, e.g., *Mencor Enterprises, Inc. v. Hets Equities Corp.* (1987) 190 Cal.App.3d 432, 440; *Gamer v. duPont Glore Forgan, Inc.* (1976) 65 Cal.App.3d 280, 287), the arbitrators award was properly vacated on this ground. (See *Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443 [arbitrator exceeds his or her powers when he or she issues an award that violates a well-defined public policy]; *Department of Personnel Administration v. California Correctional Peace Officers Assn.* (2007) 152 Cal.App.4th 1193, 1200 [courts may, indeed, must, vacate an arbitrators award when it violates a partys statutory rights or otherwise violates a well-defined public policy]; cf. *Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 276 [arbitrators award properly vacated when it violates a partys statutory rights]; see generally Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2007) 5:472, pp. 5.321 to 5.322 (rev. #1, 2007) [award may exceed the arbitrators power if it violates a well-defined and dominant public policy].)

We need not decide whether the trial court correctly held an erroneous award of an impermissible rate of interest falls within the narrow category of arbitration awards properly vacated as violative of public policy. First, Rofeh failed to establish by competent evidence the interest awarded by the arbitrator was usurious. A transaction is rebuttably presumed *not* to be usurious. [Citations.] The borrower bears the burden of proving the essential elements of a usurious transaction. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 798-799.) Rofeh attempted to meet his burden and to show 12 percent interest exceeded the legal maximum -- that is, it was more than 5 percent plus the applicable federal funds rate at the Federal Reserve Bank of San Francisco on the relevant dates -- by submitting an exhibit purporting to establish the governing federal funds rate was at all times less than 7 percent. However, Massaji objected to this evidence as lacking proper foundation and authentication and as hearsay, and the trial court sustained the objection. There was no other evidence before the court (and no request for judicial notice) from which a determination could be made to rebut the presumption that the interest rate claimed by Massaji, agreed to by Rofeh and awarded by the arbitrator was lawful.

Second, nothing in the record suggests Rofeh argued before the arbitrator the interest rate claimed by Massaji and which Rofeh had agreed to pay was excessive and, therefore, unlawful. Having failed to raise the issue of the illegality of the interest rate before the arbitrator, Rofeh was barred from raising it in the trial court as a ground to set aside the arbitration award. Any other conclusion is inconsistent with the basic purpose of private arbitration, which is to finally decide a dispute between the parties. . . . [W]e cannot permit a party to sit on his rights, content in the knowledge that should he suffer an adverse decision, he could then raise the illegality issue in a motion to vacate the arbitrators award.

Case 2:15-ap-01577-RK    Doc 1    Filed 11/04/15    Entered 11/04/15 17:47:36    Desc
A contrary rule would condone a level of procedural gamesmanship that we have condemned as undermining the advantages of arbitration. (*Moncharsh, supra, 3 Cal.4th at p. 30.)*

Rofeh also argues compounding interest (or construing the loan agreement to provide for interest on past due interest amounts) violates Californias Usury law, in the absence of an express written agreement and insists there was no such written agreement authorizing compound interest in this case. (Stats. 1919, p. lxxxiii (10 Wests Ann. Civ. Code (1985 ed.) foll. 1916.12 at p. 148 [Deerings Ann. Uncod. Measures 1919-1 (1973 ed.) p. 35.) Any legal error in the arbitrators selection of this remedy, however, is not so fundamental as to warrant a departure from the well-established rule strictly limiting judicial review of an arbitration award. [A]rbitrators, unless expressly restricted by the agreement of the parties, enjoy the authority to fashion relief they consider just and fair under the circumstances existing at the time of arbitration, so long as the remedy may be rationally derived from the contract and the breach. The rights and obligations of the parties under the contract as it was to be performed are not an unfailing guide to the remedies available when the contract has been breached. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 383; see also *Moncharsh, supra,* 3 Cal.4th at p. 11 [with narrow exceptions, an arbitrators decision cannot be reviewed for errors of fact or law].)

### 4. The Arbitrator Did Not Exceed His Powers by Awarding Damages Jointly and Severally Against Rofeh and Serengeti

Serengetis explicit agreement to participate in the resolution through arbitration of Massajis claims relating to loan repayments and his equity interest in the company is unmistakable. The parties June 24, 2006 binding arbitration agreement, entered into after the parties disagreed concerning the amount, if any, still due Massaji on the loans he had made to Rofeh and/or Serengeti and the nature and extent of Massajis interest in Serengeti, was expressly made between Massaji, an individual, on the one hand, and Rofeh and Serengeti, (collectively, the Serengeti Parties), on the other . . . . The recitals introducing the agreement state, in part, a controversy has arisen by and between Mass[aji] and Rofeh and the company and assert in the best interests of the parties hereto and in order to maintain peace between the parties, the parties have agreed to certain terms and conditions and protocol so as to resolve the Dispute. Section 1.2 of the agreement, captioned Serengeti Parties Representations and Warranties, specifically refers to each of Mark Rofeh and Serengeti Tea Company and states, The Serengeti Parties dispute the nature and extent of any claims made by Mass [aji] as related to the Loan and/or the Equity as stated hereinabove and desire that any such claims and Dispute arising from same be resolved in accordance with California law and by an Arbitrator pursuant to the protocol stated in this Agreement.

The actual language of the agreement to submit to arbitration reinforces the intended direct involvement of Serengeti: THE PARTIES HEREBY AGREE that any controversy between Mass[aji] and Rofeh and the Company, arising out of or relating to the Dispute stated above as relating to the Loan and Equity interest and any accounting thereof including a final disposition of the Dispute including any award to either party resolving the Dispute with certainty and finality shall be resolved through binding arbitration before a forum chosen in accordance with the procedures set forth hereinbelow (Arbitration). Section 3.4, Waiver of Jury Trial and Related Rights, repeated the parties agreement to have all disputes, claims or controversies arising between Mass[aji] and Rofeh or the Serengeti Parties and styled as the Dispute, decided by binding arbitration as provided in this Agreement . . . . As discussed above, Rofeh signed the agreement twice, both times under the label Serengeti Parties, once on his own behalf and once For: Serengeti Tea Company. Moreover, because the parties agreed to forego lawyers and to represent themselves in the arbitration proceedings, it was apparently contemplated that Rofeh would appear at the arbitration for himself and the company.

Notwithstanding their agreement, however, the demand for arbitration jointly submitted by Massaji and Rofeh did not identify Serengeti as a party. (Of course, as Rofeh argues in a different context, a copy of the arbitration agreement was apparently submitted to JAMS with the arbitration demand, as called for by the arbitration demand form; and it was Rofehs expectation that JAMS would honor the parties intentions regarding the conduct of the arbitration as set forth in their agreement.) Under these rather unusual circumstances, where the parties agreement clearly called for Serengeti to participate in the arbitration and any such participation necessarily would have been through Rofeh himself since he and Massaji were Serengetis only partners, we believe it was reasonable for the arbitrator to conclude Serengeti, a party to the arbitration agreement,[4]was a party to the arbitration proceeding as well. In this regard, the arbitrators view of the scope of his powers should receive the same judicial deference as we accord to the arbitrators determination on the merits. (See *Advanced Micro Devices, Inc. v. Intel Corp., supra,* 9 Cal.4th at p. 372 [the deference due an arbitrators decision on the merits of the controversy requires a court to refrain from substituting its judgment for the arbitrators in determining the contractual scope of those powers]; *Glassman v. McNab* (2003) 112 Cal.App.4th 1593, 1601 [[o]n issues concerning whether the arbitrator exceeded his powers, reviewing courts must give substantial deference to the arbitrators own assessment of his contractual authority]; see also *Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 408 [in determining whether arbitrator has exceeded his or her powers, an appellate court displays substantial deference towards the arbitrators determination of his or her contractual authority. [Citations.] All reasonable inferences must be drawn in support of the award.].)[5]

### 5. The Clarification of Final Award Was Untimely

Legal Source Directory - Because We Know Legal. Massaji v. Rofeh

Case 2:15-ap-01577-RK    Doc 1    Filed 11/04/15    Entered 11/04/15 17:47:36    Desc

In his final award, signed and served on the parties on November 17, 2006 by facsimile transmission and mail, the arbitrator awarded Massaji 25% interest in Serengeti Tea Company. In a letter dated December 6, 2006 (19 days after service of the award), Massaji requested a clarification of the ruling to specify he was not liable for Rofehs investment losses in the company. The letter indicates it was sent by facsimile transmittal to Rofeh at his office at Serengeti. Rofeh, however, declared in connection with his motion to vacate the award that he never received notice of Massajis application for clarification or correction.

In response to Massajis request, on December 19, 2006 (32 days after service of the award) the arbitrator issued his clarification of final award. The clarification stated, it was clear from the evidence that the 25% interest was to be paid to Mr. Massaji once the company made a profit beyond Mr. Rofehs investment or on the profit made upon sale of the business. The evidence proved that Mr. Rofeh invested in the business with the understanding that Mr. Massaji would not be responsible for the debts of the business.[6]

In his petition to vacate and set aside the arbitration award Rofeh argued the clarification was invalid because Massajis application had not been served on him within 10 days of the service of a signed copy of the award, as required by section 1284, second paragraph, and the arbitrator did not correct or clarify his final award not later than 30 days after service of a signed copy of the award on the applicant. ( 1284, 1st para.) Although the trial court note[d] there was an ex parte communication from Massaji to the arbitrator, an apparent reference to Rofehs assertion he had never received Massajis letter requesting clarification, because the court vacated the final award, it did not address the validity of the clarification. In his respondents brief on appeal Rofeh renews his challenge to the clarification, reasserting his contention he was not properly served with a copy of Massajis application and the clarified award violated the time requirements of section 1284 and also arguing the clarification exceeded the arbitrators powers because the issue of Massajis responsibility for the debts of Serengeti was not included within the scope of the parties arbitration agreement and had not been submitted for decision by the arbitrator.

We agree with Rofeh the clarification of award was invalid because it was made outside the time limits specified by section 1284, first paragraph. Section 1284, fourth paragraph, expressly provides, If no denial of the application or correction of the award is served within the 30-day period provided in this section, the application for correction shall be deemed denied on the last day thereof. Accordingly, on December 17, 2006 (December 17, 2006 was a Sunday) Massajis application was deemed denied. The arbitrator had no power to make a correction or clarification of his final award on December 19, 2006. (See *Roehl v. Ritchie* (2007) 147 Cal.App.4th 338, 354.)

The dispute jointly submitted by the parties to arbitration, [w]hether [Massaji] is still eligible to maintain ownership in the company and what percentage of shares, if any, he still holds, is not dependent on a determination of Massajis responsibility for Serengeti debts or liabilities. Accordingly, the final award may be confirmed while disregarding the invalid clarification without affecting the merits of the decision upon the controversies submitted. (See 1286.6, subd. (b) [court may confirm award as corrected if the arbitrator exceeded his or her power but award may be corrected without affecting the merits of the decision upon the controversy submitted].)

**DISPOSITION**

The order denying the petition to confirm and granting the petition to vacate and set aside the arbitration award is reversed, and the cause remanded with directions to enter a new order denying the petition to vacate, correcting the award to eliminate the language set forth in the arbitrators December 19, 2006 clarification of final award and confirming the award as corrected. Massaji is to recover his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

PERLUSS, P. J.

We concur:

WOODS, J.

JACKSON, J.

Publication courtesy of San Diego pro bono legal advice.

Analysis and review provided by Poway Property line attorney.


San Diego Case Information provided by www.fearnotlaw.com

_____

[1] This material was first submitted to the trial court with Massajis motion for reconsideration of the order vacating the arbitration award. Although Rofeh opposed that motion and the trial court ultimately denied it on the ground Massaji had not shown sufficient diligence in discovering this correspondence and presenting it to the court, there is no dispute regarding the accuracy of the chronology.


[2] Statutory references are to the Code of Civil Procedure unless otherwise indicated.


[3] [T]he court shall vacate the award if the court determines any of the following: [] (1) The award was procured by corruption, fraud or other undue means. [] (2) There was corruption in any of the arbitrators. [] (3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator. [] (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. [] (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title. [] (6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. However, this subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between employers and employees or between their respective representatives. ( 1286.2, subd. (a).)


[4] An arbitrator ordinarily has no power to determine the rights and obligations of a party who has not signed the arbitration agreement although a nonsignatory may enforce or be bound by an arbitration agreement under applicable principles of agency and contract law. (See, e.g., Dryer v. Los Angeles Rams (1985) 40 Cal.3d 406, 418 [holding individual defendants in breach of contract action are entitled to benefit of arbitration even though not parties to contract between plaintiff and corporate defendant]; City of Hope v. Bryan Cave, L.L.P. (2002) 102 Cal.App.4th 1356, 1358-1359; see generally Knight et al., Cal. Practice Guide: Alternative Dispute Resolution, supra, 5:261-5:284, pp. 5-182 to 5-198.1 (rev. #1, 2007).)


[5] Even if, contrary to our conclusion, Serengeti were improperly included in the award, the trial court provided no explanation -- and we can identify none -- why the award could not have been corrected to eliminate Serengetis liability for damages, leaving Rofeh fully responsible for payment, without affecting the merits of the decision upon the controversy submitted. ( 1286.2, subd. (a)(4) [not proper to vacate arbitration award on ground arbitrator exceeded powers if award can be corrected without affecting merits of the decision]; see Ikerd v. Warren T. Merrill & Sons (1992) 9 Cal.App.4th 1833, 1837 [affirming trial courts order correcting arbitration award to delete award against nonparty and then confirming award].)


[6] The clarification also corrected the final orders factual error regarding the identity of the individual from whom Massaji acquired his additional 10 percent interest in Serengeti, stating he had purchased the interest from his cousin, not his brother.

**EXHIBIT E**

B6B (Official Form 6B) (12/07)

In re    **Schafa David Massaji**                                                    Case No. _____
_____
                                    Debtor

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

   **Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1.  Cash on hand | X | | | |
| 2.  Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **NO BANK ACCOUNT** | - | 0.00 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4.  Household goods and furnishings, including audio, video, and computer equipment. | | **Miscellaneous household furnishings, electronics, etc.** | - | 1,500.00 |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6.  Wearing apparel. | | **Personal clothing** | - | 500.00 |
| 7.  Furs and jewelry. | | **Misc. Jewelry** | - | 500.00 |
| 8.  Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9.  Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |

|  | Sub-Total > | 2,500.00 |
|---|---|---|
|  | (Total of this page) | |

__2__    continuation sheets attached to the Schedule of Personal Property

B6B (Official Form 6B) (12/07) - Cont.

In re    **Schafa David Massaji** _____,    Case No. _____

Debtor

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | | **The debtor has a judgment in his favor. It is worth about $1.9MM. But the defendant also has a judgment against the debtor for a similar amount,** | - | 1,900,000.00 |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |

Sub-Total >    1,900,000.00
(Total of this page)

Sheet __1__ of __2__ continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re   **Schafa David Massaji**                                                           Case No. _____
                                          Debtor

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 2014 Hyundai, leased, no equity | - | 20,000.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  | Sub-Total ><br>(Total of this page) | 20,000.00 |
|---|---|---|
|  | Total > | 1,922,500.00 |

Sheet __2__ of __2__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

B6F (Official Form 6F) (12/07)

In re **Schafa David Massaji**                                          Case No. _____

                                                    Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | | |
| Account No. | | | 2013 | | | | | |
| Creditor #: 1 AT&T Universal Card 1500 Boltonfield Street Columbus, OH 43228 | - | | claim | | | | | |
| | | | | | | | | 3,000.00 |
| Account No. | | | | | | | | |
| Citicorp Credit Services Attn: Centralized Bankruptcy P.O. Box 20363 Kansas City, MO 64195 | | | Representing: AT&T Universal Card | | | | | Notice Only |
| Account No. | | | Credit Card | | | | | |
| Creditor #: 2 AT&T Universal Card 50363 - 0005 1500 Boltonfield Street Columbus, OH 43228 | - | | | | | | | |
| | | | | | | | | 7,000.00 |
| Account No. | | | 2014 | | | | | |
| Creditor #: 3 BMW Bank of North America, Inc. PO Box 201347 Arlington, TX 76006-1347 | | | leased car | | | | | |
| | | | | | | | | 3,000.00 |

___3___ continuation sheets attached

Subtotal
(Total of this page)                                                    13,000.00

B6F (Official Form 6F) (12/07) - Cont.

In re    **Schafa David Massaji**    Case No. _____

_____
Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. | | | | claim | | | | |
| Creditor #: 4 **BMW Financial Services** PO Box 78103 Phoenix, AZ 85062 | | - | | | | | | 25,000.00 |
| Account No. | | | | 2014 medical | | | | |
| Creditor #: 5 **Cedars Sinai Medical Center** P.O. Box 48954 Los Angeles, CA 90048-0954 | | - | | | | | | Unknown |
| Account No. | | | | Medical Bills | | | | |
| Creditor #: 6 **Cedars-Sinai Medical Network Servic** c/o Grant & Weber 26575 W. Agoura Rd. Calabasas, CA 91302 | | - | | | | | | 2,500.00 |
| Account No. | | | | Attorney | | | | |
| Creditor #: 7 **David Affeld** 2049 Century Park East, Suite 2460 Los Angeles, CA 90067 | | - | | | | | | 2,000.00 |
| Account No. | | | | Medical Bills | | | | |
| Creditor #: 8 **Dr. Edward Massey** 1151 Hilary Lane Beverly Hills, CA 90210 | | - | | | | | | 100,000.00 |

Sheet no. __1__ of __3__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)    **129,500.00**

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Schafa David Massaji**                                    , Case No. _____
_____
                    Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HWJC | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | Medical Bills | | | | |
| Creditor #: 9 <br> Dr. Ralph Massey <br> 174 N. Canyon View Dr. <br> Los Angeles, CA 90049 | | - | | | | | 300,000.00 |
| Account No. | | | Medical Bills | | | | |
| Creditor #: 10 <br> Dr. Robert Massey <br> 196 N. Thurston Ave <br> Los Angeles, CA 90049 | | - | | | | | 1,000,000.00 |
| Account No. | | | 2014 judgment | | | | |
| Creditor #: 11 <br> Mark Rofeh, Esq <br> 911 N. Roxbury <br> Beverly Hills, CA 90210 | | - | | | | | 2,000,000.00 |
| Account No. | | | Attorney | | | | |
| Creditor #: 12 <br> Mary Rofeh, Esq <br> 911 N. Roxbury Drive <br> Beverly Hills, CA 90210 | | - | | | | | 2,000,000.00 |
| Account No. | | | claim | | | | |
| Creditor #: 13 <br> Matt Geratos & Chris Campbell Esq <br> 88 West 6th Street, 11th Floor <br> Los Angeles, CA 90017 | | - | | | | | 100,000.00 |

Sheet no. __2__ of __3__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)        **5,400,000.00**

B6F (Official Form 6F) (12/07) - Cont.

In re  **Schafa David Massaji**                                     Case No. _____

_____,

                              Debtor

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
| | | H W | J C | | | | | |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | | Personal Loan | | | | |
| Creditor #: 14<br>Navid Solouk<br>1409 Armacost Avenue #301<br>Los Angeles, CA 90025 | | - | | | | | | 7,500.00 |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |

Sheet no. __3__ of __3__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | Subtotal (Total of this page) | 7,500.00 |
|---|---|---|
| | Total (Report on Summary of Schedules) | 5,550,000.00 |

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com

Best Case ᵈ ᵉ ᵈ

**EXHIBIT F**

Calculation of Interest Owed

Judgment held by Mark Rofeh

| | |
|---|---|
| Principal Part 1 | $1,757,414 |
| Interest per judgment from 3/8/13 to 5/16/13 (70 days at $481.48 per diem) | 33,703.60 |
| Subtotal | 1,791,117.60 |
| Post-judgment interest from 5/17/13 to 6/24/15 (769 days at $490.72 per diem) | 377,363.68 |
| subtotal | 2,168,481.20 |
| Principal part 2 | $24,000 |
| Post-judgment interest from 5/17/13 (769 days at $6.58 per diem) | 5,056.43 |
| subtotal | 29,056.44 |
| Total | 2,197,537.60 |

Judgment held by Massaji

| | |
|---|---|
| Principal | $1,065,266.33 |
| Post judgment interest from 7/29/09 to 6/24/15 (2157 days @$291.85 per diem) | 629,520.45 |
| Total | $1,694,786.78 |